No. 26-1014

# IN THE UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

GOVERNOR JOSH SHAPIRO, *et al.*,

*Appellants,*

v.

U.S. DEPARTMENT OF AGRICULTURE, *et al.*,

*Appellees,*

On Appeal from the United States District Court for the Middle District of Pennsylvania, Case No. 25-cv-998

## Opening Brief of Governor Josh Shapiro, the Pennsylvania Department of Agriculture, and Secretary Russell Redding

Jennifer C. Selber
Jacob B. Boyer
Michael J. Fischer
Stephen R. Kovatis
Office of General Counsel
30 North Street, Suite 200
Harrisburg, PA 17101
(717) 460-6786
jacobboyer@pa.gov

*Counsel for Appellants*

# TABLE OF CONTENTS

Table of Authorities.................................................................................. ii

Introduction...............................................................................................1

Jurisdictional Statement .........................................................................2

Statement of the Issues...........................................................................2

Statement of Related Cases ....................................................................3

Statement of the Case .............................................................................3

Summary of the Argument ......................................................................8

Standard of Review ..................................................................................9

Argument.................................................................................................10

   I.    The district court has jurisdiction over APA claims
        challenging the termination of the LFPA program. ....................10

        a.    The Tucker Act does not apply to cooperative
              agreements. ........................................................................10

        b.    The LFPA Program was implemented through a
              cooperative agreement. ......................................................14

  II.    This is not a contract dispute in disguise. ..................................18

        a.    USDA did not receive consideration ..................................19

        b.    The Pennsylvania parties do not seek damages.................22

Conclusion ..............................................................................................26

# TABLE OF AUTHORITIES

**Cases**

*American Center for Int'l Labor Solidarity v. Chavez-DeRemer*, 789 F. Supp. 3d 66 (D.D.C. 2025) ....................................... 14

*Anchorage v. United States*, 119 Fed. Cl. 709 (2015) ....................... 14, 19

*Bowen v. Massachusetts*, 487 U.S. 879 (1988) ......................................... 23

*City of Houston v. HUD*, 24 F.3d 1421 (D.C Cir. 1994) ........................ 24

*Columbus Regional Hospital v. United States*, 990 F.3d 1330 (Fed. Cir. 2021) ........................................................................... 21

*Common Cause of Pennsylvania v. Pennsylvania*, 558 F.3d 249 (3d Cir. 2009) ........................................................................... 9

*Dep't of Commerce v. New York*, 588 U.S. 752 (2019) ............................ 10

*Dep't of Education v. California*, 604 U.S. 650 (2025) ...................... 11, 23

*Hymas v. United States*, 810 F.3d 1312 (Fed. Cir. 2016) ............... passim

*Nat'l Center for Mfg. Sciences v. United States*, 114 F.3d 196 (Fed. Cir. 1997) ................................................................. 13, 23, 24

*NIH v. American Public Health Assoc.*, 145 S.Ct. 2658 (2025) (Mem.) ..................................................................................... 11, 23

*Pacito v. Trump*, 169 F.4th 895 (9th Cir. 2026) .................... 13, 14, 15, 23

*Rick's Mushroom Serv., Inc. v. United States*, 521 F.3d 1338 (Fed. Cir. 2008) ................................................................. 12, 13, 15

*Rick's Mushroom Serv., Inc. v. United States*, 76 Fed. Cl. 250 (2007) ............................................................................................. 14

*St. Bernard Parrish Gov't v. United States*, 134 Fed. Cl. 730 (2017) ......................................................................... 14, 15, 19, 20

*Urban Sustainability Directors Network v. USDA*, No. 25-1775, 2025 WL 2374528 (D.D.C. Aug. 14, 2025) .................... 15, 21, 22

*Washington v. Dep't of Commerce*, 812 F. Supp. 3d 1169 (W.D. Wash. 2025) ................................................................ 14, 25

*Westmoreland Human Opportunities, Inc. v. Walsh*, 246 F.3d 233 (3d Cir. 2001) ................................................................ 11, 13

**Statutes**

28 U.S.C. § 1291 ............................................................................2

28 U.S.C. § 1331 ............................................................................2

28 U.S.C. § 1491 ..........................................................................10

31 U.S.C. § 6301 ..........................................................................11

31 U.S.C. § 6303 .................................................................... 11, 19

31 U.S.C. § 6304 ..........................................................................12

31 U.S.C. § 6305 .................................................................... 13, 18

5 U.S.C. § 702 ....................................................................... 10, 23

5 U.S.C. § 704 ..............................................................................10

## INTRODUCTION

Last year, the U.S. Department of Agriculture (USDA) abruptly terminated the Local Food Purchase Assistance (LFPA) program. That program had been established for two important public purposes: "to maintain and improve food and agricultural supply chain resiliency," and "to procure and distribute local and regional foods and beverages that are healthy, nutritious, unique to their geographic areas and that meet the needs of the population." JA 40-41.

USDA collaborated with states, including Pennsylvania, to carry out the program, which fulfilled its public purposes by delivering funds to food banks to purchase healthy food from local farmers under USDA's and Pennsylvania's joint supervision. USDA provided several rounds of funding for the program and had executed a cooperative agreement with Pennsylvania Department of Agriculture (PDA) in December 2024 for the latest round.

When USDA terminated the LFPA program a few months later, it said the program supporting local farmers and food banks no longer advanced its priorities. JA 64, 69. Despite repeated inquiries, USDA never said what priorities had changed or why. JA 46-48. After failing to get

any answers from USDA, Governor Josh Shapiro, PDA, and PDA Secretary Russell Redding (collectively, the Pennsylvania parties) challenged the termination decision under the Administrative Procedure Act (APA). Although the agreement establishing the LFPA program was not a contract, and despite that the Pennsylvania parties challenge USDA's asserted regulatory authority for the termination decision and do not seek damages, the district court concluded that this matter presents a contract dispute belonging in the Court of Federal Claims.

That decision was wrong and should be reversed.

## JURISDICTIONAL STATEMENT

The Pennsylvania parties maintain that the district court has original jurisdiction over this matter under 28 U.S.C. § 1331 because the claims in this case arise under federal law. This Court has appellate jurisdiction under 28 U.S.C. § 1291 because the Pennsylvania parties timely appealed from the district court's final judgment. JA 1.

## STATEMENT OF THE ISSUES

Is a federal agency's decision to terminate a program effectuated through a cooperative agreement between a federal and state agency subject reviewable under the APA? JA 22-23.

2

Are the Pennsylvania parties' challenges to the unlawful termination of the LFPA program reviewable under the APA? JA 15-25.

## STATEMENT OF RELATED CASES

There are no related cases.

## STATEMENT OF THE CASE

In 2021, USDA created the LFPA Program. JA 40-42. LFPA was a food-assistance program through which states received funding from USDA to be distributed to food banks to purchase healthy food from local farmers. JA 40-41.

The program's purposes were "to maintain and improve food and agricultural supply chain resiliency," and to allow states "to procure and distribute local and regional foods and beverages that are healthy, nutritious, unique to their geographic areas and that meet the needs of the population." JA 40-41.

PDA administered the LFPA program in Pennsylvania. It received nearly $30 million during the program's first two rounds. JA 42. That funding, which was exhausted midway through 2025, was used to purchase 30 million pounds of food from local farmers and served more than 6.1 million Pennsylvania households. JA 43.

In October 2024, USDA announced it would supply a third round of funding for the LFPA program. JA 43. And in December 2024, USDA and PDA executed an agreement to continue Pennsylvania's LFPA program with an additional $13 million in funding. JA 43. Those funds would have provided 12.4 million meals to more than 3 million Pennsylvania households. JA 77.

The agreement to extend the LFPA program was memorialized in the "Local Food Purchase Assistance 2025 Cooperative Agreement" between USDA's Agricultural Marketing Service and PDA. JA 59. USDA stated in the agreement that the reason USDA was entering into it was "to support to maintain and improve food and agricultural supply chain resiliency through the procurement of local, domestic and unprocessed or minimally processed agricultural commodities." JA 59.

Each agency had continuing obligations under the LFPA program. USDA would supply funding, collaborate with PDA on the project timeline, and ensure "alignment of activities with project goals." JA 61-62. In addition, USDA agreed to make staff available, review PDA's implementation plan, and "have ongoing substantial involvement" in the program's administration. JA 61. PDA agreed to use the funds consistent with the

program's public purposes, submit reports to USDA about the program, and meet with USDA. JA 61-62.

In March 2025, USDA notified PDA that it had decided the LFPA program "no longer effectuates agency priorities." JA 64. Because of that decision, USDA intended to terminate the recently completed cooperative agreement "in accordance with 2 C.F.R. § 200.340(a)(4) and the terms and conditions of the award." JA 64. The termination letter did not provide any explanation for why or how USDA had made its determination, or what had changed from when the agency completed the agreement. JA 64.

Secretary Redding responded to the notice by expressing that there was no justification for USDA's changed position and requesting that USDA both provide the basis for its decision and describe the administrative appeal that USDA was required to make available under 2 C.F.R. § 200.342. JA 46, 65-65.

USDA never responded to Secretary Redding's letter. JA 47.

Secretary Redding then sent USDA Secretary Brooke Rollins a subsequent letter about the LFPA termination decision in response to a series of inaccurate statements Secretary Rollins made about

Pennsylvania's administration of the LFPA program and formally requested that USDA reconsider its decision to terminate the LFPA program. JA 47, JA 67-68.

USDA did not respond to this letter either. JA 47.

In May 2025, USDA informed PDA that it was ending PDA's LFPA program and terminating the cooperative agreement. JA 48, 69.

Even after USDA made its final decision, Secretary Redding met with representatives of USDA to encourage them to revisit the decision and to ask that they describe the appeal procedures. JA 48, 77.

USDA said it would do neither. JA 48, 77.

The Pennsylvania parties then filed this case, alleging that the decision to terminate the LFPA program was arbitrary and capricious, that it exceeded USDA's authority under the regulations it claimed permitted the termination, and that USDA had failed to follow the procedures required under the same regulations. JA 50-55. In each way, USDA had violated the APA. The Pennsylvania parties also brought a claim that USDA had violated constitutional due process protections. JA 55-57.

A month after this case was filed, Secretary Rollins finally responded to one of Secretary Redding's letters. JA 84. In her response,

Secretary Rollins repeated inaccurate statements about Pennsylvania's LFPA program, which Secretary Redding promptly corrected in another letter. JA 91-92.

Once money from the first two LFPA rounds had been exhausted, the Pennsylvania parties moved for a preliminary injunction.

Several months after the preliminary injunction motion was filed, the district court dismissed the APA claims under Rule 12(b)(1), finding that they fell within the Court of Federal Claims' exclusive jurisdiction. It dismissed the constitutional claim under Rule 12(b)(6). JA 4-5. And the district court dismissed the motion for a preliminary injunction as moot. JA 4-5.

The Pennsylvania parties timely appealed. JA 1.[1]

---

[1] Dismissal of the constitutional claim under Rule 12(b)(6) and denial of the preliminary injunction are not before this Court.

## SUMMARY OF THE ARGUMENT

The Pennsylvania parties sued USDA for unlawfully terminating an agreement that allowed Pennsylvania and USDA to jointly operate a program meant to support farmers, food banks, and people in need of food assistance.

The district court dismissed the suit under the mistaken conclusion that it is a contract dispute subject to the Court of Federal Claim's jurisdiction under the Tucker Act, rather than a challenge to arbitrary and unlawful final agency action reviewable under the APA.

That jurisdictional conclusion was wrong because the agreement between USDA and PDA that continued the LFPA program was a cooperative agreement, not a contract. Cooperative agreements create categorically different relationships from those that exist under contracts, and claims related to cooperative agreements ordinarily are not covered by the Tucker Act. Because they are not within the exclusive grant of jurisdiction under the Tucker Act, challenges to unlawful agency action related to cooperative agreements are reviewable under the APA.

Two additional considerations confirm that this is not a contract dispute. First, USDA did not receive any consideration from the LFPA

cooperative agreement. Consideration is an essential component of contract formation and so without consideration there can be no contract subject to dispute. Second, the Pennsylvania parties seek equitable relief that would restore a program and relationship that was unlawfully terminated. While an equitable order returning the parties to the status quo before USDA's unlawful conduct should release funds, those funds would not be compensatory damages, which are unencumbered funds that make up for losses. Here, the funds would be covered by the terms of the LFPA agreement and would be part and parcel of the parties' on-going relationship.

## STANDARD OF REVIEW

The grant of a motion to dismiss under Rule 12(b)(1) is reviewed *de novo*. *Common Cause of Pennsylvania v. Pennsylvania*, 558 F.3d 249, 257 (3d Cir. 2009). Allegations in the complaint must be accepted as true. *Id.*

## ARGUMENT

I. **The district court has jurisdiction over APA claims challenging the termination of the LFPA program.**

The district court's conclusion that the Tucker Act requires that this case be brought in the Court of Federal Claims was wrong because the agreement governing the LFPA program is not a contract.

a. **The Tucker Act does not apply to cooperative agreements.**

Congress enacted the APA to ensure federal agency action is judicially reviewable. The APA "embodies a basic presumption of judicial review." *Dep't of Commerce v. New York*, 588 U.S. 752, 771 (2019) (cleaned up). Although it is meant to be broad, judicial review under the APA has exclusions. It does not apply to claims for "money damages" or where "any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought." 5 U.S.C. § 702; *see also id.* § 704 (limiting APA review to action "for which there is no other adequate remedy in a court").

The Tucker Act gives the Court of Federal Claims jurisdiction over claims against the United States founded "upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). Claims to "enforce a contractual obligation to pay money" are within the grant of

jurisdiction to the Court of Federal Claims and therefore are excluded from the APA's right to judicial review. *Dep't of Education v. California*, 604 U.S. 650, 651 (2025) (cleaned up); *see also NIH v. American Public Health Assoc.*, 145 S.Ct. 2658 (2025) (Mem.).

Yet as courts have recognized both before and after the Supreme Court's orders in *Department of Education* and *NIH*, federal funding agreements take different forms. And not all agreements are the same for purposes of determining when related claims are properly brought in the Court of Federal Claims under the Tucker Act or instead in a district court. Indeed, this Court previously recognized the importance the form of a funding agreement may hold in determining where jurisdiction exists. *Westmoreland Human Opportunities, Inc. v. Walsh*, 246 F.3d 233, 249 n.7 (3d Cir. 2001).

As described in the Federal Grant and Cooperative Agreements Act of 1977 (FGCAA)—a statute Congress passed to bring consistency to federal funding arrangements, *see* 31 U.S.C. § 6301(2); *see also Westmoreland*, 246 F.3d at 255 n.10—contracts are used for the federal government to procure something of value that benefits the United States, 31 U.S.C. § 6303. For an agreement to be a contract—and thus for

disputes related to that agreement to be within the ambit of the Tucker Act—the agreement must "provide for transfer of goods or services to the government" or otherwise confer "a direct benefit" on the federal government. *Rick's Mushroom Serv., Inc. v. United States*, 521 F.3d 1338, 1344 (Fed. Cir. 2008). Nothing in the FGCAA requires that the federal government maintain a continuing relationship with its contracting counterpart.

A grant agreement—a second type of arrangement—establishes the inverse relationship. Its principal purpose is to transfer something of value from the federal government to a recipient to carry out a public purpose. 31 U.S.C. § 6304(1). The federal government does not remain involved in carrying out the activity funded under a grant. *Id.* § 6304(2).

Cooperative agreements are a third type of arrangement and contemplate a categorically different relationship between the federal government and its counterpart.[2] Like a grant agreement, cooperative agreements convey something of value from the federal government to a state, local government, or other recipient to execute a public purpose. *Id.*

---

[2] The Supreme Court's orders in *Department of Education* and *NIH* did not address how the Tucker Act applies to cooperative agreements.

§ 6305(1). But unlike the discrete transactions authorized under grants (and contracts), cooperative agreements create an ongoing relationship between the federal government and its counterparty. Under a cooperative agreement, the federal government maintains "substantial involvement" in how the activity contemplated under the agreement is performed. *Id.* § 6305(2); *see also Hymas v. United States*, 810 F.3d 1312, 1325 (Fed. Cir. 2016) (noting Congress passed the FGCAA to distinguish "federal assistance relationships from procurement relationships").

Given their separate purposes and means of implementation, cooperative agreements are distinct from grants and contracts. Those differences carry legal import in several contexts. *See Pacito v. Trump*, 169 F.4th 895, 926 & n.12 (9th Cir. 2026) (identifying some significant differences); *see also Westmoreland*, 246 F.3d at 249 n.7. Jurisdiction can be one of them.

Challenges to agency action related to cooperative agreements usually are not contract disputes within the scope of the Tucker Act. *See, e.g.*, *Pacito*, 169 F.4th at 925-27; *Hymas*, 810 F.3d at 1329-30; *Rick's Mushroom*, 521 F.3d at 1344; *Nat'l Center for Mfg. Sciences v. United States*, 114 F.3d 196, 198-99 (Fed. Cir. 1997); *American Center for Int'l Labor*

*Solidarity v. Chavez-DeRemer*, 789 F. Supp. 3d 66, 85-91 (D.D.C. 2025); *Washington v. Dep't of Commerce*, 812 F. Supp. 3d 1169, 1180-81 (W.D. Wash. 2025); *St. Bernard Parrish Gov't v. United States*, 134 Fed. Cl. 730, 736 (2017), *aff'd on other grounds*, 916 F.3d 987 (Fed. Cir. 2019).

Indeed, when litigating in the Court of Federal Claims, the federal government commonly urges that court to construe documents as cooperative agreements (or some other non-contractual document) because claims about a cooperative agreement are not within the Tucker Act's grant of jurisdiction. *E.g.*, *St. Bernard*, 134 Fed. Cl. at 734; *Anchorage v. United States*, 119 Fed. Cl. 709, 713 (2015); *Rick's Mushroom Serv., Inc. v. United States*, 76 Fed. Cl. 250, 257 (2007); *see also Pacito*, 169 F.4th at 927 (noting the forum-dependent nature of the federal government's position on cooperative agreements).

### b. The LFPA Program was implemented through a cooperative agreement.

The claims in this case relate to USDA's unlawful and arbitrary termination of a program executed through a cooperative agreement. Those claims are not contractual and so do not fall within the scope of the Tucker Act's exclusion of APA review.

Whether an agreement is a contract or cooperative agreement "turns upon the principal purpose of the relationship." *Hymas*, 810 F.3d at 1327. If the federal government intends to transfer something of value to carry out a public purpose and will remain involved in how that public purpose is served, then the agreement is best understood as a cooperative agreement. *Id.*

Agreements that do "not provide for transfer of goods or services to the government," that do not bear any "evidence of a buyer-seller relationship," and through which "the government did not receive a direct benefit" are not contracts. *Rick's Mushroom*, 521 F.3d at 1344.

When evaluating whether an agreement is contractual or not, courts look first to how the federal agency itself identified the agreement. That choice "has been persuasive but not conclusive for Tucker Act purposes." *Pacito*, 169 F.4th at 926; *see also Urban Sustainability Directors Network v. USDA*, No. 25-1775, 2025 WL 2374528, at *16 (D.D.C. Aug. 14, 2025) ("Although the label on the agreement is not dispositive, how the government agency classifies or denominates an agreement has probative value in assessing the sufficiency of the consideration the agency expects." (cleaned up)); *St. Bernard*, 134 Fed. Cl. at 735 (finding it

significant that federal government labeled an agreement a "Cooperative Agreement").

Respect for an agency's choice matters because Congress passed the FGCAA to supply federal agencies clear definitions of each type of agreement and flexibility to use those understood meanings to decide which type of agreement suits a given interaction. *Hymas*, 810 F.3d at 1329. As discussed above, the agency's choice has legal consequences, and it is important for those consequences to be known at the time that parties reach their agreement.

Here, USDA identified the agreement implementing the LFPA program as a "cooperative agreement" between USDA's Agricultural Marketing Service and PDA. That agreement was titled the "Local Food Purchase Assistance 2025 Cooperative Agreement." JA 59.

USDA called the LFPA agreement a "cooperative agreement" because it is one. As USDA wrote in the agreement, its principal purpose "is to support to maintain and improve food and agricultural supply chain resiliency through the procurement of local, domestic and unprocessed or minimally processed agricultural commodities." JA 59. The agreement achieves those public purposes by providing PDA with $13 million dollars

to be given to food banks to "[p]urchase local, unprocessed or minimally processed domestic foods from local producers, targeting historically underserved farmers/producers/fishers and small businesses including processors, aggregators, and distributors" so that they can "[d]istribute the food purchased to underserved communities." JA 61.

The only procurement under the agreement is by food banks that will purchase food from farmers. JA 59. Like other agreements determined to be cooperative agreements, the LFPA agreement's primary purpose is advancing a public policy goal. *See Hymas*, 810 F.3d at 1328 (concluding agreement is cooperative agreement because "there is no serious dispute that assisting private farmers to promote wildlife conservation is the *sine qua non* of the CFA"). USDA will not receive any payments, services, or crops under the LFPA agreement.

Further, USDA was to maintain substantial involvement in carrying out the activities that the LFPA agreement contemplates. Its responsibilities explicitly included having "ongoing substantial involvement" in the LFPA Program. JA 61. USDA was to collaborate with PDA on a project timeline and make sure activities aligned with the agreement's goals.

17

JA 61. Staff at USDA was to be available to assist through the life of the agreement. JA 61.

Simply, the LFPA agreement conveys something of value ($13 million) to carry out public purposes (support the supply chain, local farmers, and communities in need of food support). USDA would maintain substantial involvement in accomplishing those policy goals. All relevant considerations, therefore, confirm that the LFPA agreement is a cooperative agreement as defined under 31 U.S.C. § 6305(1).

## II. This is not a contract dispute in disguise.

While there may be instances in which challenges to a cooperative agreement belong in the Court of Federal Claims, the district court was wrong to conclude that this is such a case. Two considerations independently confirm as much. First, USDA did not receive any direct benefit from the LFPA agreement, as is required for an agreement to be considered a contract. Second, any funds the Pennsylvania parties receive from an order in this case would not be damages but instead the downstream consequence of an equitable order enjoining USDA's decision that it could terminate the LFPA program based on its claim that the program no longer advanced the agency's priorities.

### a. USDA did not receive consideration.

Although USDA elected to make the LFPA agreement a cooperative agreement and it bears the hallmarks of what Congress deemed to be a cooperative agreement, the district court determined that the LFPA agreement was in fact a contract and thus the claims here within the Court of Federal Claims' exclusive jurisdiction. JA 20-25.

Four elements must be established for a contract with the United States to exist: (1) mutuality of intent; (2) offer and acceptance; (3) exchange of consideration; and (4) that the government representative executing the agreement can bind the United States. *E.g.*, *St. Bernard*, 134 Fed. Cl. at 735.

Consideration is the element typically missing from a cooperative agreement. In government contracting, consideration means the federal government received some direct benefit from the agreement. *Id.*; *see also* 31 U.S.C. § 6303(1) (describing the principal purpose of a contract as the United States acquiring "property or services for [its] direct benefit"). The direct benefit can take different forms. It can be money or an economic benefit; it can also be receipt of a service or use of infrastructure. *Anchorage*, 119 Fed. Cl. at 713-14 (concluding agreement was a contract because

19

U.S. Government received "increased military infrastructure"); *St. Bernard*, 134 Fed. Cl. at 736 (explaining possible benefits).

But a funding recipient's commitment to fulfill laudable public policy goals of the U.S. Government—or to engage in work that advances a federal agency's "overall mission"—does not constitute consideration. *See Hymas*, 910 F.3d at 1328. So, for example, agreements that allowed farmers to work on parcels of federal land in ways that promoted wildlife conservation efforts were cooperative agreements because the Fish and Wildlife Service did not receive any payment or crops from the land. *Id.*

Likewise, federally funded work to clean up debris after Hurricane Katrina advanced federal initiatives but the cleanup work did not constitute contracting consideration. *St. Bernard*, 134 Fed. Cl. at 735-36.

Here, the district court concluded that because LFPA funds came "with an array of requirements attached to the receipt, use, and distribution of the funds awarded," JA 22-23 (cleaned up), USDA received a contractual benefit from the award. The district court took that notion from *Columbus Regional Hospital v. United States*, 990 F.3d 1330 (Fed. Cir. 2021), but its analysis was insufficiently precise and overlooked critical distinctions between the facts there and here.

In *Columbus Regional*, a hospital sought funding it claimed was owed under agreements FEMA had executed with Indiana for disaster assistance after severe storm damage. *Id.* at 1335. The Federal Circuit concluded the agreements were contracts despite the federal government's argument that it received no consideration. *Id.* at 1338. Unlike the district court below, the Federal Circuit considered the specific nature of the requirements attached to the use of money. *Id.* at 1340. Notably, Indiana had agreed to become an agent of FEMA and "act on FEMA's behalf to recover any funds that were dispensed through error, misrepresentation, or fraud, or if funds are spent inappropriately." *Id.* Even more, Indiana agreed to reimburse FEMA for funds it failed to timely recover. *Id.* These aspects of the agreement directly benefitted FEMA.

Moreover, Indiana agreed to distribute grants to subrecipients and provide technical assistance to them, both tasks that fell within FEMA's statutory obligations. *Urban Sustainability Directors Network*, 2025 WL 2374528, at *17 (evaluating *Columbus Regional*). Therefore, Indiana "was performing services FEMA would otherwise have to perform in distributing, monitoring, and vetting disaster aid, thus conferring a direct benefit distinct from generally advancing FEMA's mission." *Id.*

But with the LFPA program, PDA is not performing any service for USDA—it is implementing a program that advances policy goals. The LFPA agreement's restrictions on use of the money, such as that it will be used to "[p]urchase local, unprocessed or minimally processed domestic foods from local producers, targeting historically underserved farmers/producers/fishers and small businesses including processors, aggregators, and distributors," JA 61, merely establish the public purposes of the program. PDA's reporting requirements under the agreement are standard fare. *See also Urban Sustainability Directors Network*, 2025 WL 2374528, at \*16. Public money is rarely distributed without reporting requirements needed to show the money has been used properly. Such routine requirements do not constitute consideration, and the district court was wrong to conclude otherwise.

b. **The Pennsylvania parties do not seek damages.**

Like federal funding arrangements, not all disbursements of funds that follow from a court order are the same. The right to review agency action under the APA does not apply to claims for money damages. *Dep't of Education*, 604 U.S. at 651; *see also* 5 U.S.C. § 702. But a district court's jurisdiction under the APA "'is not barred by the possibility' that

22

an order setting aside an agency's action may result in the disbursement of funds." *Dep't of Education*, 604 U.S. at 651 (quoting *Bowen v. Massachusetts*, 487 U.S. 879, 910 (1988)); *see also NIH*, 145 S.Ct. 2658 (citing *Department of Education* for conclusion that APA's waiver of sovereign immunity does not apply to efforts to enforce obligations to pay money).

Indeed, when a party seeks an order that the government perform under the terms of a cooperative agreement, the Court of Federal Claims lacks jurisdiction—even though the order may result in a disbursement of funds. *Nat'l Center for Mfg. Sciences*, 114 F.3d at 198; *Pacito*, 169 F.4th at 928-30 (explaining why *Department of Education* and *NIH* did not foreclose the district court jurisdiction's where plaintiffs sought non-contractual relief that might result in payment).

Damages are a substitute for monetary losses, while equitable remedies seek to return a plaintiff to the position they were in before the unlawful conduct. *Bowen v. Massachusetts*, 487 U.S. 879, 895 (1988). Damages typically are unconditioned payment that may come from different sources, while money disbursed as the consequence of an equitable order necessarily comes from the same funding authority and is subject to the same conditions that would have applied initially. *Nat'l Center for*

*Mfg. Sciences*, 114 F.3d at 198; *see also City of Houston v. HUD*, 24 F.3d 1421, 1428 (D.C Cir. 1994) ("An award of monetary relief from any source of funds other than the 1986 CDBG appropriation would constitute money damages rather than specific relief."). Money that comes with "restrictions governing the manner in which [it] may be allocated to [the recipient] and spent" are not damages. *Nat'l Center for Mfg. Sciences*, 114 F.3d at 201.

In this case, funds that would be disbursed if the Pennsylvania parties prevail would be the consequence of equitable relief rather than damages. The district court engaged in an overly generalized analysis that failed to consider the meaningful distinctions between the two. JA 23-24.

The allegation here is not that USDA violated the terms of the cooperative agreement, but instead that its decision to terminate the cooperative agreement and the program it created was arbitrary and capricious and exceeded the authority federal agencies possess under 2 C.F.R. §§ 200.340-200.342. JA 50-55. The scope of that regulatory authority is independent of obligations articulated in the LFPA agreement. The Pennsylvania parties therefore do not seek to enforce a provision under the cooperative agreement and do not seek to obtain a particular remedy,

such as damages, contemplated under the agreement itself. As was true in another recent decision addressing this issue, the rights asserted and relief requested here "are not contingent on any specific right granted by the Awards themselves, and they exist independent of the Awards." *Washington*, 812 F. Supp. 3d at 1179.

The relief the Pennsylvania parties seek is not compensation for injuries suffered but instead a return to the status quo before USDA's unlawful termination decision. The requested relief would vacate the termination decision. Funds that would result from such an equitable order would not be unencumbered, as would be true of damages, nor calculated based on compensable losses. Instead, any available funds would remain subject to the terms of the cooperative agreement. They could be used only for the purposes required under the LFPA agreement subject to review first by USDA. JA 61. Further, PDA would participate in status meetings with USDA related to the performance of activities under the agreement. Finally, there would be an end date on the availability of funding, JA 63, which would not be true of damages.

Each of these confirms that this action does not seek damages for a breach of contract.

# CONCLUSION

For the reasons above, the district court's order should be reversed.

April 8, 2026

Respectfully submitted,

/s/ *Jacob B. Boyer*

Jennifer C. Selber
Jacob B. Boyer
Michael J. Fischer
Stephen R. Kovatis
Office of General Counsel
30 North Street, Suite 200
Harrisburg, PA 17101
(717) 460-6786
jacobboyer@pa.gov

*Counsel for Appellants*

# CERTIFICATES

I, Jacob B. Boyer, certify that:

1. I am a member of the bar of this Court in good standing;

2. Virus detection software was run on this file and no virus was detected;

3. The text of this brief is identical to the text in paper copies that will be filed with the Court;

4. This response contains 4,667 words and therefore complies with Federal Rule of Appellate Procedure 32(a)(7)(b)(i). In making this certificate, I have relied on the word count of the word-processing system used to prepare the brief; and

5. A copy of this brief has been served on all counsel of record using the Court's CM/ECF system.


April 8, 2026                    /s/ *Jacob B. Boyer*
                                 Jacob B. Boyer

                                 *Counsel for Appellants*

No. 26-1014

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

GOVERNOR JOSH SHAPIRO, *et al.*,

*Appellants,*

v.

U.S. DEPARTMENT OF AGRICULTURE, *et al.*,

*Appellees,*

On Appeal from the United States District Court for the Middle District of Pennsylvania, Case No. 25-cv-998

## Joint Appendix Volume I of II

Jennifer C. Selber
Jacob B. Boyer
Michael J. Fischer
Stephen R. Kovatis
Office of General Counsel
30 North Street, Suite 200
Harrisburg, PA 17101
(717) 460-6786
jacobboyer@pa.gov

*Counsel for Appellants*

# TABLE OF CONTENTS

Joint Appendix Volume I

Notice of Appeal (ECF No. 26) ............................................... JA 1

Order (ECF No. 24) ........................................................ JA 4

Memorandum (ECF No. 23) ................................................... JA 6


Joint Appendix Volume II

District Court Docket Sheet ................................................ JA 30

Complaint (ECF No. 1) ..................................................... JA 36

Local Food Purchase Assistance 2025 Cooperative
Agreement (ECF No. 1-2) ................................................... JA 59

March 7, 2025, Termination Notice
(ECF No. 1-3) ............................................................. JA 64

March 25, 2025, Letter from Secretary Redding
(ECF No. 1-4) ............................................................. JA 65

April 17, 2025, Letter from Secretary Redding
(ECF No. 1-5) ............................................................. JA 67

May 7, 2025, Termination Letter (ECF No. 1-6) ............................. JA 69

Secretary Russell C. Redding Declaration (ECF No. 7-2) ...... JA 70

Deputy Administrator Jack David Tuckwiller Declaration
(ECF No. 10-1) ............................................................ JA 78

Secretary Russell C. Redding Supplemental Declaration
(ECF No. 15-1) ............................................................ JA 85

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| GOVERNOR JOSH SHAPIRO, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> U.S. DEPARTMENT OF AGRICULTURE, *et al.*, <br><br> Defendants. | No. 25-cv-998 <br> Judge Joseph F. Saporito, Jr. |

**NOTICE OF APPEAL**

Plaintiffs hereby appeal the Court's December 3, 2025, Order, ECF No. 24, to the United States Court of Appeals for the Third Circuit.

JA001

January 2, 2026

Respectfully submitted,

John H. Howard (Pa. 84002)
Chief Counsel
Pennsylvania Department of Agriculture
2301 N. Cameron Street
Harrisburg, PA 17110

Jennifer C. Selber
General Counsel

Michael J. Fischer (Pa. No. 322311)
Executive Deputy General Counsel

s/ *Jacob B. Boyer*

Jacob B. Boyer (Pa. No. 324396)
Stephen R. Kovatis (Pa. No. 209495)
Deputy General Counsel
Office of General Counsel
30 North Street, Suite 200
Harrisburg, PA 17101
jacobboyer@pa.gov
(717) 460-6786

*Counsel for Plaintiffs*

JA002

## CERTIFICATES

I certify that a copy of this notice has been served on all counsel of record using the Court's CM/ECF system.

/s/ *Jacob B. Boyer*
Jacob B. Boyer

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

GOVERNOR JOSH SHAPIRO,
et al.,

   Plaintiffs,    CIVIL ACTION NO. 1:25-cv-00998

   v.       (SAPORITO, J.)

U.S. DEPARTMENT OF
AGRICULTURE, et al.,

   Defendants.

## ORDER

AND NOW, this 3rd day of December, 2025, in accordance with the accompanying Memorandum, **IT IS HEREBY ORDERED THAT**:

1. The defendants' motion to dismiss (Doc. 11) is **GRANTED**;

2. The plaintiffs' APA claims, set forth in Counts I, II, and III of the complaint, are **DISMISSED** for lack of subject matter jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(1);

3. The plaintiffs' Fifth Amendment due process claim, set forth in Count IV of the complaint, is **DISMISSED** for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6);

4. The plaintiffs' motion for a preliminary injunction (Doc. 5) is **DENIED as moot**; and

JA004

- 2 -

5.    The clerk shall mark this case as **CLOSED**.


_s/Joseph F. Saporito, Jr._
JOSEPH F. SAPORITO, JR.
United States District Judge

JA005

## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

GOVERNOR JOSH SHAPIRO,
et al.,

      Plaintiffs,

      v.

U.S. DEPARTMENT OF
AGRICULTURE, et al.,

      Defendants.

CIVIL ACTION NO. 1:25-cv-00998

(SAPORITO, J.)

## MEMORANDUM

In this action, the plaintiffs—Josh Shapiro, Governor of Pennsylvania; the Pennsylvania Department of Agriculture ("PDA"); and Russell Redding, Secretary of PDA—challenge the decision by the defendants—the United States Department of Agriculture ("USDA"); Brooke Rollins, Secretary of USDA; and the Agricultural Marketing Service ("AMS"), a federal agency within USDA—in which the defendants terminated the Local Food Purchase Assistance 2025 Cooperative Agreement (the "LFPA25 Agreement") entered into between AMS and PDA in December 2024.

The plaintiffs contend that the federal agency's termination of the LFPA25 Agreement was in violation of a provision of the Administrative

JA006

Procedures Act ("APA"), 5 U.S.C. § 706(2)(A), which permits a federal district court to set aside an agency action that is arbitrary, capricious, or otherwise not in accordance with law. The plaintiffs further contend that the federal agency's termination of the LFPA25 Agreement was unlawful because it violated their Fifth Amendment rights to procedural due process.

The plaintiffs have filed a motion for a preliminary injunction, seeking an order enjoining the defendants from implementing the agency's May 7, 2025, termination decision pending judicial review of the challenged agency action. Doc. 5. The plaintiffs' motion is fully briefed and ripe for decision. Doc. 7; Doc. 10; Doc. 15; Doc. 18; Doc. 22.

The defendants have filed a motion to dismiss the plaintiffs' APA claims for lack of subject matter jurisdiction, and to dismiss the plaintiffs' due process claim for failure to state a claim upon which relief can be granted. Doc. 11. The defendants' motion is fully briefed and ripe for decision. Doc. 14; Doc. 16; Doc. 17; Doc. 18; Doc. 22.

## I.   BACKGROUND

The LFPA25 Agreement did not create a new program. Instead, it supplied a third round of funding to Pennsylvania under USDA's Local

- 2 -

Food Purchase Assistance ("LFPA") program. Through the LFPA, USDA awards funding to states and other government entities to purchase foods produced either within the state or within 400 miles of the delivery destination to help support local, regional, and underserved producers. The purpose of the program is to maintain and improve food and agricultural supply chain resiliency by helping states to procure and distribute local and regional foods and beverages that are healthy, nutritious, or unique to their geographic areas and that meet the needs of the population. Food purchased under the LFPA serves feeding programs, including food banks and organizations that reach underserved communities.

Funding for LFPA initially came from the America Rescue Plan Act of 2021, Pub. L. No. 117-2, § 1001, 135 Stat. 4, 10 (2021), which appropriated $4 billion to purchase and distribute food and agricultural commodities to individuals in need. Pennsylvania was awarded $15,200,000 in this initial round of funding for LFPA programs. Pennsylvania subcontracted with Feeding Pennsylvania, a statewide organization of approximately one dozen regional food banks that purchase food from local farmers, which is then distributed to a network

- 3 -

of thousands of local food pantries and soup kitchens across Pennsylvania, which in turn serve individuals and communities with limited access to food.

In November 2022, USDA announced that it was expanding the LFPA program with an additional $464 million in funding from the Commodity Credit Corporation ("CCC"), a government-owned corporation under the supervision and direction of the U.S. Secretary of Agriculture. The CCC has been authorized by Congress to procure agricultural commodities for sale to other government agencies, foreign governments, and domestic, foreign, or international relief or rehabilitation agencies, and to meet domestic requirements. *See* 15 U.S.C. § 714c(c). This second round of funding for the LFPA program was called "LFPA Plus." Pennsylvania was awarded an additional $14,724,610 in this second round of funding for LFPA programs.

In October 2024, USDA announced its commitment to a third round of funding for the LFPA program, referred to as "LFPA25," with an additional $500 million in funding from the CCC. Pennsylvania was awarded an additional $13,003,131 in this third round of funding for LFPA programs. On or about December 19, 2024, a designated

representative of USDA signed the LFPA25 Agreement for Pennsylvania. Compl. Ex. 1, at 3, Doc. 1-2. On December 27, 2024, Secretary Redding countersigned the LFPA Agreement on behalf of PDA. *Id.* at 2. The LFPA25 Agreement was intended to provide funding for Pennsylvania's LFPA program after the LFPA Plus funds were exhausted. At the time, Pennsylvania had exhausted its initial, congressionally appropriated round of funding under the LFPA, but a balance of funds remained available under LFPA Plus, which was not exhausted until after May 2025.[1] The LFPA25 Agreement expressly provided that it was to be executed "according to all applicable parts of Title 2 of the Code of Federal Regulations (CFR), Parts 25, 170, 200, and 400 or as they may be later revised, and successive published regulations as appropriate." *Id.* at 4. It further provided that the agreement would continue in force until January 14, 2028, unless "amended or terminated by mutual consent of the parties in writing or *terminated by either party upon 60-day notice in writing.*" *Id.* at 5 (emphasis added).

---

[1] The complaint alleges that PDA had less than $30,000 in LFPA Plus funds remaining by the end of May 2025. Compl. ¶ 28. It is our understanding that the remaining balance was exhausted shortly thereafter. *See* Russell C. Redding Decl. ¶ 12, Doc. 7-2; Jack David Tuckwiller Decl. ¶¶ 12–13, Doc. 10-1.

JA010

On March 7, 2025, the deputy administrator of AMS, Jack Tuckwiller, sent a letter to PDA notifying the state agency that the LFPA25 Agreement would be terminated in 60 days "in accordance with 2 CFR § 200.340(a)(4) and the terms and conditions of the award." Compl. Ex. 2, Doc. 1-3. Echoing the text of § 200.340, the letter stated that the agency had determined that the LFPA25 Agreement "no longer effectuates agency priorities" and, thus, "termination of the award is appropriate." *Id.* The notice further indicated that it was being sent "[p]ursuant to 2 CFR § 200.341." *Id.* The letter did not provide any further explanation of why or how the LFPA25 Agreement no longer effectuated USDA priorities.[2]

On March 25, 2025, Secretary Redding wrote Deputy Administrator

---

[2] The Office of Management and Budget has promulgated a set of regulations, the Uniform Grant Guidance, 2 C.F.R. part 200. These regulations "appl[y] to federal agencies that make federal awards to non-federal and other entities. These regulations lay out a host of requirements for federal [awards], including the procedural steps an agency must take before it can suspend or terminate [an award]." *Climate United Fund v. Citibank, N.A.*, 778 F. Supp. 3d 90, 101 (D.D.C. 2025); *see also* 2 C.F.R. § 200.1 (defining the terms "Federal award" to include grant agreements and cooperative agreements, which are also defined therein); *id.* § 200.340 (termination of Federal awards); *id.* § 200.341 (notice of termination); *id.* § 200.342 (objections, hearings, and appeals).

JA011

Tuckwiller to urge the agency to rescind its termination notice and, if it would not, to provide PDA with the factual and legal basis for its determination that the LFPA25 Agreement no longer effectuated agency priorities. Compl. Ex. 3, Doc. 1-4. Redding also asked that USDA provide its written procedures for processing objections, hearings, and appeals, as required under 2 C.F.R. § 200.342, or to inform PDA that no such procedures existed. *Id.*

USDA never responded to Redding's letter.

On May 7, 2025, Deputy Administrator Tuckwiller sent a letter formally terminating the LFPA25 Agreement. Compl. Ex. 5, Doc. 1-6. The termination letter stated that "the agreement was terminated in accordance with 2 CFR § 200.340(a)(4) and the terms and conditions of the award." *Id.*

## II.   LEGAL STANDARDS

### A. Rule 12(b)(1) Standard

Rule 12(b)(1) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss for "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). The plaintiff bears the burden of establishing the existence of subject matter jurisdiction when challenged under Rule

JA012

12(b)(1). *See Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991). A defendant may challenge the existence of subject matter jurisdiction in one of two fashions: it may attack the complaint on its face or it may attack the existence of subject matter jurisdiction in fact, relying on evidence beyond the pleadings. *See Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000); *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). Where a defendant attacks a complaint as deficient on its face, "the court must consider the allegations of the complaint as true." *Mortensen*, 549 F.2d at 891. "In deciding a Rule 12(b)(1) facial attack, the court may only consider the allegations contained in the complaint and the exhibits attached to the complaint; matters of public record such as court records, letter decisions of government agencies and published reports of administrative bodies; and 'undisputably authentic' documents which the plaintiff has identified as a basis of his claims and which the defendant has attached as exhibits to his motion to dismiss." *Medici v. Pocono Mountain Sch. Dist.*, No. 09-CV-2344, 2010 WL 1006917, at *2 (M.D. Pa. Mar. 16, 2010). However, when a motion to dismiss attacks the existence of subject matter jurisdiction in fact, "no presumptive truthfulness attaches to plaintiff's

JA013

allegations," and "the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Mortensen*, 549 F.2d at 891. This case falls into the former category.

### B. Rule 12(b)(6) Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "Under Rule 12(b)(6), a motion to dismiss may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds the plaintiff's claims lack facial plausibility." *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)). In deciding the motion, the Court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). Although the Court must accept the fact allegations in the complaint as true, it is not compelled to accept "unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual

JA014

allegation." *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013) (en banc) (quoting *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007)). Nor is it required to credit factual allegations contradicted by indisputably authentic documents on which the complaint relies or matters of public record of which we may take judicial notice. *In re Washington Mut. Inc.*, 741 Fed. App'x 88, 91 n.3 (3d Cir. 2018); *Sourovelis v. City of Phila.*, 246 F. Supp. 3d 1058, 1075 (E.D. Pa. 2017); *Banks v. Cnty. of Allegheny*, 568 F. Supp. 2d 579, 588–89 (W.D. Pa. 2008).

## III. DISCUSSION

### A. Counts I, II, and III: APA Claims

With respect to the plaintiffs' APA claims, set forth in Counts I, II, and III of the complaint, the defendants argue that this federal district court lacks subject matter jurisdiction under the APA "to enforce a contractual obligation to pay money" against the federal government. *See Dep't of Educ. v. California*, 604 U.S. 650, 651 (2025) (per curiam) (quoting *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 212 (2002); *see also* Br. Supp. 13 (quoting *California*, 604 U.S. at 651), Doc. 14. "Instead, the Tucker Act grants the Court of Federal Claims jurisdiction over suits based on 'any express or implied contract with the

- 10 -

United States.'" *California*, 604 U.S. at 651 (quoting 28 U.S.C. § 1491(a)(1)). *See generally Randall v. United States*, 95 F.3d 339, 346 (4th Cir. 1996) ("The interplay between the Tucker Act and the APA is somewhat complicated and raises some significant issues of federal court jurisdiction."). The defendants characterize the LFPA25 Agreement as such a contract, and the plaintiff's APA claims as ones seeking to enforce a contractual obligation to pay money.

"The United States and its agencies are generally immune from suit in federal court absent a clear and unequivocal waiver of sovereign immunity." *Crowley Gov't Servs., Inc. v. Gen. Servs. Admin.*, 38 F.4th 1099, 1105 (D.C. Cir. 2022). In asserting their claims, the plaintiffs have relied on the APA, which waives sovereign immunity for claims against the United States "seeking relief other than money damages" brought by parties "adversely affected or aggrieved by agency action," provided no "other statute that grants consent to suit expressly or impliedly forbids the relief which is sought." 5 U.S.C. § 702.

The defendants, on the other hand, rely on the Tucker Act, which grants jurisdiction to the Court of Federal Claims "to render judgment upon any claim against the United States founded . . . upon any express

- 11 -

or implied contract with the United States." 28 U.S.C. § 1491(a)(1). Courts have interpreted this provision "to confer exclusive jurisdiction over breach of contract claims against the United States seeking more than $10,000 in damages on the Court of Federal Claims, and thus to impliedly forbid contract claims against the Government from being brought in district court under the waiver in the APA." *Crowley*, 38 F.4th at 1106 (citations, internal quotation marks, and brackets omitted).[3] "In other words, if a claim falls within the Tucker Act's jurisdiction conferred on the Court of Federal Claims, the APA's waiver of sovereign immunity does not apply to that claim, and a federal district court would therefore lack subject-matter jurisdiction." *Am. Ctr. for Int'l Lab. Solidarity v. Chavez-Deremer*, 789 F. Supp. 3d 66, 83 (D.D.C. 2025).

"[A]n action against the United States which is *at its essence* a contract claim lies within the Tucker Act and . . . a district court has no power to grant injunctive relief in such a case." *Megapulse, Inc. v. Lewis*, 672 F.2d 959, 967 (D.C. Cir. 1982) (emphasis added). "The Tucker Act impliedly forbids an APA action seeking injunctive and declaratory relief

---

[3] The Little Tucker Act, 28 U.S.C. § 1346(a)(2), "gives district courts concurrent jurisdiction with the Court of Federal Claims in most Tucker Act cases seeking less than $10,000." *Crowley*, 38 F.4th at 10106 n.5.

only if that action is a disguised breach-of-contract claim." *Thakur v. Trump*, 148 F.4th 1096, 1103 (9th Cir. 2025) (quoting *United Aeronautical Corp. v. U.S. Air Force*, 80 F.4th 1017, 1026 (9th Cir. 2023) (brackets and internal quotation marks omitted). "To determine whether a claim is a disguised breach-of-contract claim, we apply the *Megapulse* test, which considers: (1) the source of the rights upon which the plaintiff bases its claims and (2) the type of relief sought (or appropriate)." *Thakur*, 148 F.4th at 1103 (citing *N. Star Alaska v. United States*, 14 F.3d 36, 37 (9th Cir. 1994); *see also Megapulse*, 672 F.2d at 968; *Porwancher v. Nat'l Endowment of the Humans.*, 792 F. Supp. 3d 107, 112 (D.D.C. 2025); *Chavez-Deremer*, 789 F. Supp. 3d at 83; *Pacito v. Trump*, 772 F. Supp. 3d 1204, 1214 (W.D. Wash. 2025), *appeal filed*, No. 25-1939 (9th Cir. Mar. 25, 2025); *Maryland v. Corp. for Nat'l & Cmty. Serv.*, 785 F. Supp. 3d 68, 103 (D. Md. 2025). "If rights and remedies are *statutorily* or *constitutionally* based, then district courts have jurisdiction; if rights and remedies are *contractually* based then only the Court of Federal Claims does, even if the plaintiff formally seeks injunctive relief." *United Aeronautical*, 80 F.4th at 1026; *see also Thakur*, 148 F.4th at 1103; *Pacito*, 772 F. Supp. 3d at 1214. "The mere fact that a case involves a contract 'does not, by

JA018

triggering some mystical metamorphosis, automatically transform an action . . . into one on the contract and deprive the court of jurisdiction it might otherwise have.'" *Chavez-Deremer*, 789 F. Supp. 3d at 83 (quoting *Crowley*, 38 F.4th at 1107 (ellipsis in original)).

The plaintiffs advance three claims under the APA, 5 U.S.C. § 706(2)(A). First, in Count I, the plaintiffs contend that the agency's termination of the LFPA25 cooperative agreement was arbitrary and capricious because the termination notice and letter claimed that the agreement no longer effectuated agency priorities, but failed to provide any further explanation of what those agency priorities were or how the program failed to advance them. Next, in Count II, the plaintiffs contend that the termination violated 2 C.F.R. § 200.340, and thus was contrary to law, because the LFPA25 cooperative agreement did not include a provision expressly permitting the agency to terminate the agreement based on changed agency priorities. Finally, in Count III, the plaintiffs contend that the termination violated 2 C.F.R. § 200.341(a), which requires written notice of termination to provide "reasons for termination," and 2 C.F.R. § 200.342, which requires an agency terminating such a federal award to provide recipients "with an

JA019

opportunity to object and provide information challenging the action," and thus it was contrary to law.

Upon review of the pleadings, the cooperative agreement, the parties' motion papers, and the substantial volume of recent jurisprudence in this area of the law, we conclude that the APA claims asserted by the plaintiffs in this case are essentially contractual, rather than based on federal statute or regulation, and thus they belong in the Court of Federal Claims.

At bottom, the source of the rights the plaintiffs seek to vindicate is the LFPA25 cooperative agreement itself, not any statute or regulation. The regulation upon which the termination was explicitly based requires that the basis for termination be spelled out in "the terms and conditions of the Federal award" itself. *See* 2 C.F.R. § 200.340(a)(4) ("The Federal award may be terminated . . . [b]y the Federal agency . . . pursuant to the terms and conditions of the Federal award, including, to the extent authorized by law, if an award no longer effectuates the program goals or agency priorities."); *see also id.* § 200.340(b) ("The Federal agency . . . must clearly and unambiguously specify all termination provisions in the terms and conditions of the Federal award.").

- 15 -

> Thus, to determine whether [the agency] violated § 200.340(a)(4), the court must look back to the award[] [itself]. It must ask: Do[es] the agreement[] contain a term permitting [the agency] to terminate the award for no longer effectuating agency priorities, or is such provision absent? That is a classic contract question.

*Vera Inst. of Justice v. U.S. Dep't of Justice*, ___ F. Supp. 3d ____, 2025 WL 1865160, at *13 (D.D.C. July 7, 2025). "Although [§ 200.340(a)] might impose procedural requirements on the government having some impact on the contract, the [regulation] in no way creates the substantive right to the remedy [the plaintiffs] seek[]." *Spectrum Leasing Corp. v. United States*, 764 F.2d 891, 894 (D.C. Cir. 1985); *see also Vera Inst.*, 2025 WL 1865160, at *13 (quoting *Spectrum Leasing*, 764 F.2d at 894). In other words, PDA's "right to the . . . payments arose only upon creation and satisfaction of its [cooperative agreement] with the government; in no sense did it exist independently of that [cooperative agreement]." *Spectrum Leasing*, 764 F.2d at 894; *see also Vera Inst.*, 2025 WL 186516, at *13 (quoting *Spectrum Leasing*, 764 F.2d at 894). "That the termination also arguably violates certain other regulations does not transform the action into one based solely on those regulations. Nor does plaintiff's decision to allege only a violation of the regulations change the essential character of the action." *Ingersoll-Rand Co. v. United States*,

JA021

780 F.2d 74, 78 (D.C. Cir. 1985); *see also Vera Inst.*, 2025 WL 1865160, at *12 (quoting *Ingersoll-Rand*, 780 F.2d at 78).[4]

In a recently filed notice of supplemental authority, the plaintiffs contend that, as a *cooperative agreement*, the LFPA25 agreement is not an enforceable contract under the Tucker Act because it lacks consideration, providing no direct and tangible benefit to the federal government, and, as a consequence, the Court of Federal Claims does not possess exclusive jurisdiction in this case. *See* Doc. 18. Contrary to the plaintiffs' argument, however, we find that the LFPA25 cooperative agreement constitutes an enforceable contract. In exchange for provision of $13 million in funds awarded under the LFPA agreement, PDA agreed to comply with "an array of requirements attached to the receipt, use, and distribution of the" funds awarded. *See Columbus Reg'l Hosp. v. United States*, 990 F.3d 1330, 1340 (Fed. Cir. 2021); *id.* ("[C]onsideration may consist of performance or a return promise to perform, and performance 'may be a specified act of forbearance, or any one of several specified acts or forbearances of which the offeree is given the choice, or

---

[4] We note that the LFPA25 cooperative agreement explicitly incorporates 2 C.F.R. part 200 as part of the agreement. *See* Compl. Ex. 1, at 4, Doc. 1-2.

such conduct as will produce a specified result[.]'") (quoting Restatement (Second) of Contracts § 71 cmt. d (1981)); *see also Vera Inst.*, 2025 WL 1865160, at *10.

As for the relief requested, the plaintiffs studiously avoid requesting a retrospective award of money damages. But the relief they do request—an order declaring that the termination action was unlawful and vacating the agency's termination action, with the effect of reinstating the LFPA25 cooperative agreement and making the allotted $13 million in funds once again available to reimburse PDA for its purchase of local agricultural products—amounts in essence to the "classic contractual remedy of specific performance." *U.S. Conf. of Cath. Bishops v. U.S. Dep't of State*, 770 F. Supp. 3d 155, 163–64 (D.D.C. 2025); *see also Ingersoll-Rand*, 780 F.2d at 79–80; *Vera Inst.*, 2025 WL 1865160, at *12. Most critically, the non-monetary relief sought by the plaintiffs in this case "has little, if any, independent value [apart] from the future potential of monetary recovery" under the contract itself. *Vera Inst.*, 2025 WL 1865160, at *13. Several allegations in the complaint underscore the fact that, notwithstanding the complaint's focus on nonmonetary relief, the actual aim of this litigation is to secure the promised $13 million in

- 18 -

funds for the purchase of local agricultural products. *See, e.g.*, Compl. ¶¶ 31, 50, 57–59, 61, 73, 93 (discussing the intended use of LFPA25 funds and the ultimate impact of the agency's termination action on PDA's agricultural support and food assistance programs), Doc. 1. The declaratory and injunctive relief sought by the plaintiffs here "does not have 'considerable value' apart from the 'future potential for monetary gain.' . . . [I]t merely ensures that the monetary relief will continue." *Vera Inst.*, 2025 WL 1865160, at *13. As Justice Gorsuch has commented in a similar context: "An order vacating the government's decision to terminate [awards] under the APA is in every meaningful sense an order requiring the government to pay those [awards]." *Nat'l Insts. of Health v. Am. Pub. Health Ass'n*, 606 U.S. ___, 145 S. Ct. 2658, 2664 (2025) (Gorsuch, J., concurring in part and dissenting in part).

Moreover, we find little to distinguish the scenario presented in this case from that presented in *Department of Education v. California*, 604 U.S. 650 (2025) (per curiam), and thus we find relief under the APA foreclosed by that Supreme Court precedent. Much like this case, the federal agency in *California* terminated grant agreements on the ground that the grants were "inconsistent with, and no longer effectuate[d],

- 19 -

JA024

Department priorities," with little elaboration, citing 2 C.F.R. § 200.340(a)(4). *See id.* at 656 (Jackson, J., dissenting) (quoting the termination letter). The plaintiffs challenged this award termination with minimal explanation as arbitrary and capricious. *See id.* (Jackson, J., dissenting) (describing the case's procedural history). The trial court entered a preliminary injunction, which the Supreme Court ultimately stayed, holding that the government was likely to succeed in showing that the district court lacked jurisdiction in that scenario. *See id.* at 968. In light of the *California* decision, we find the plaintiffs here have failed to meet their burden of demonstrating that this Court has jurisdiction over the plaintiffs' claim that termination of the LFPA25 cooperative agreement with minimal explanation was an arbitrary and capricious agency action under the APA. *See Harris Cnty. v. Kennedy*, 786 F. Supp. 3d 194, 218 (D.D.C. 2025).

Accordingly, the plaintiffs' APA claims, set forth in Counts I, II, and III of the complaint, will be dismissed for lack of subject matter jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(1).

### B. Count IV: Fifth Amendment Due Process Claim

In Count IV of the complaint, the plaintiffs assert a Fifth

JA025

Amendment due process claim, contending that they had a protected property interest in the LFPA25 award, and the agency's termination action deprived them of that protected interest without due process of law. The defendants move to dismiss this claim for failure to state a claim upon which relief can be granted, arguing that the plaintiffs lacked any protected property interest in the LFPA25 cooperative agreement or award.[5]

"The first inquiry in every due process challenge is whether the plaintiff has been deprived of a protected interest in 'property' or 'liberty.'" *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 59 (1999). As the defendants have noted in their supporting brief,[6]

> [o]utside of the employment context, courts have resisted application of due-process principles to government contracts because with scores of millions of government contracts in effect at any point in time,

---

[5] The parties do not contest our exercise of subject matter jurisdiction under the APA with respect to this claim. *See generally Transohio Sav. Bank v. Dir., Off. of Thrift Supervision*, 967 F.2d 598, 609–11 (D.C. Cir. 1992) (finding the exercise of jurisdiction under the APA proper with respect to procedural due process claim based on deprivation of a protected property interest in a government contract), *abrogated on other grounds as recognized by Perry Capital LLC v. Mnuchin*, 864 F.3d 591, 620 (D.C. Cir. 2017); *Sharp v. Weinberger*, 798 F.2d 1521, 1523–24 (D.C. Cir. 1986); *Vera Inst.*, 2025 WSL 1865160, at *7.

[6] *See* Br. Supp. 38 (quoting *Vera Inst.*, 2025 WL 1865160, at *15), Doc. 14.

JA026

> it is unimaginable that all government agencies would be required to provide a hearing before they take any action that is arguably inconsistent with a contract.

*Vera Inst.*, 2025 WL 1865160, at \*15 (quoting *New Vision Photography Program, Inc. v. D.C.*, 54 F. Supp. 3d 12, 29 (D.D.C. 2014)); *see also Reich v. Barry*, 883 F.2d 239, 242 (3d Cir. 1989) ("[I]f every breach of contract by someone acting under color of state law constituted a deprivation of property for procedural due process purposes, the federal courts would be called upon to pass judgment on the procedural fairness of the processing of a myriad of contractual claims against public entities.").

In response, the plaintiffs have offered no reason to think that the LFPA25 cooperative agreement is "different from the 'millions of government contracts in effect at any point in time' to which courts seldom apply 'due-process principles.'" *Nat'l Urb. League v. Trump*, 783 F. Supp. 3d 61, 93 (D.D.C. 2025); *see also Vera Inst.*, 2025 WL 1865160, at \*15 (quoting *Nat'l Urb. League*, 783 F. Supp. 3d at 93). Indeed, the plaintiffs have devoted no more than two cursory, unsupported sentences to this issue in their opposition brief, so it is waived.[7] *See Monzon v. De*

---

[7] The relevant portion of the plaintiffs' opposition brief follows in its entirety: "Finally, USDA argues PDA has no protected interest in the

*(continued on next page)*

- 22 -

*La Roca*, 910 F.3d 92, 106 n.90 (3d Cir. 2018) (finding argument waived where party failed to develop it beyond two sentences); *Rodrigues v. Fort Lee Bd. of Educ.*, 458 Fed. App'x 124, 128 (3d Cir. 2011) (per curiam) ("[Plaintiffs'] failure to develop these arguments is a sufficient ground for deeming any such claims waived."); *Gen. Auto Serv. Station v. City of Chi.*, 526 F.3d 991, 1006 (7th Cir. 2008) (concluding that a two-paragraph "cursory argument" was "so brief that [plaintiff] ha[d] waived it"); *Weinstein v. Schwartz*, 422 F.3d 476, 477 n.1 (7th Cir. 2005) ("The failure to develop an argument constitutes a waiver."); *Walker v. N.Y. State Dep't of Health*, 788 F. Supp. 3d 427, 503 (E.D.N.Y. 2025) ("Plaintiffs forfeited these arguments by making only conclusory assertions in their brief in opposition to Defendants' Motion to Dismiss."); *Rice v. Kim*, 704 F. Supp. 3d 845, 850 (N.D. Ill. 2023) ("[B]ecause it is a cursory argument citing no case law, that argument is waived."); *Holdcraft v. Town of Brookfield*, 365 F. Supp. 3d 190, 198 n.5 (D. Mass. 2019) (finding procedural due process

---

LFPA25 Agreement, USDA Br. at 38, but the protected interest here is not the contract itself. The protected interest is continued operation of the food assistance program that PDA has been running since 2022. Compl. ¶ 93." Br. Opp'n 22, Doc. 16. The plaintiffs have failed to articulate any substantive argument against dismissal, and they cite no legal authority whatsoever in support of these conclusory statements.

claim waived because "brief conclusory arguments made in Plaintiff's opposition brief" failed to provide any legal analysis to support the claim).

Notwithstanding the plaintiffs' waiver, we find the defendants' substantive argument for dismissal persuasive. The plaintiffs have failed to plausibly allege the deprivation of a protected property interest.

Accordingly, the plaintiffs' Fifth Amendment due process claim, set forth in Count IV of the complaint, will be dismissed for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6). Moreover, this claim will be dismissed *without* leave to amend, as any such amendment is clearly futile.

## IV.   CONCLUSION

For the foregoing reasons, the defendants' motion to dismiss will be granted. Counts I, II, and III of the complaint will be dismissed for lack of subject matter jurisdiction. Count IV of the complaint will be dismissed for failure to state a claim upon which relief can be granted. The plaintiffs' motion for a preliminary injunction will be denied as moot.

An appropriate order follows.


Dated: December 3, 2025               *s/Joseph F. Saporito, Jr.*
                                       JOSEPH F. SAPORITO, JR.
                                       United States District Judge


- 24 -

JA029